524-09/GMV/PLS
FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiff
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Gina M. Venezia
Pamela L. Schultz

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEYTRADE AG,

        Plaintiff,

-against-

ADUBOS SUDOESTE LTDA.,

        Defendant.

09 Civ.

**VERIFIED COMPLAINT**



    Plaintiff Keytrade AG, ("Keytrade") as and for its Verified Complaint against Defendant Adubos Sudoeste Ltda. ("Adubos") alleges upon information and belief as follows:

### JURISDICTION

    1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of maritime obligations arising under contracts. This case thus falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333.

### PARTIES

    1.    At all times material hereto, Plaintiff Keytrade was and still is a business entity duly organized and existing under the laws of a foreign country with an address at Zurcherstrasse 68, P.O. Box CH-8800 Thalwil, Switzerland.

2. At all times relevant hereto, Defendant Adubos was and still is a foreign business entity organized and existing under the laws of a foreign country with an address at Rodovia BR 060, KM 509, Quadra 01 – Modulo 01 A 26, Dist. Agroindustrial, 75.800-970 Jatai – Go, CX. Postal, 60, Brazil, CNPJ: 03.225.684/0001-18.

### FACTUAL BACKGROUND: THE CONTRACT TERMS

3. This action arises out of a series of contracts entered into between Plaintiff and Defendant from July 31, 2007, through January 17, 2008, which involved the sale and ocean transportation of certain bulk cargoes of nitrate products.[1]

4. The terms of the contracts were identical in several key respects.

5. Each contract contemplated that cargo would be loaded onboard a vessel, travel by sea and ultimately be delivered to the designated port in Brazil.

6. The prices under the contracts were on the basis of CFR FO ["Cost and Freight Free Out"] Paranagua, Brazil, which meant that (i) Keytrade was obliged to arrange and pay the costs and freight necessary to transport the cargoes by ocean transport from the load port to the discharge port of Paranagua, Brazil, and (ii) any additional costs due to events occurring after the time the cargoes were delivered onboard the vessel at the load port were for Adubos' account.

7. Under each of the contracts, cargoes were to be loaded onto vessels nominated by Keytrade for carriage to the discharge port.

8. Ocean bills of lading were to be issued for each cargo, and payment for each cargo was to be made within a specified period of time after the issuance of the bills of lading.

---

[1] Pursuant to their terms, the contracts are to be kept private and confidential, but Plaintiff will make them available for the Court's *in camera* review.

9. The contracts also set forth the rate at which the vessels were required to discharge the cargoes and required Adubos to comply with the Paranagua Port requirements with respect to the discharge of the vessels.

10. The contracts further obligated Adubos to pay any additional costs due to un-berthing of the vessels.

11. The contracts further contained terms as to the calculation for laytime/demurrage/dispatch. "Laytime", "demurrage" and "despatch" are terms utilized in the maritime industry which relate to the loading and discharge of cargo. Laytime is a set period of time (which is often expressed in terms of days or daily rate of loading/discharge) afforded to the responsible party for loading and discharge of the cargo. Demurrage represents liquated damages due for delays which occur when the cargo is not loaded or discharged within the stipulated laytime. Despatch is the opposite of demurrage and represents compensation to be paid when loading or discharge operations are completed within a shorter period than the laytime allowed.

12. Under the terms of the contracts, the commencement of laytime was dependent on when the vessels tendered "Notice of Readiness" (commonly referred to as "NOR") that the vessels were ready in all respects to load and/or discharge, whether the vessel was in berth or not, whether the vessel had been granted free pratique or not, and whether the vessel had been cleared through customs or not.

13. The contracts provided that demurrage/dispatch was to be at the "Rates as per performing vessel nomination" and required demurrage/dispatch to be settled within 30 days after the completion of the discharge.

14. Any overtime ordered by any port authority was to be for Adubos' account.

15. The contract also required compliance with the ISPS [International Ship and Port Facility Security] Code and set forth the effect of any delays which result from measures imposed by port facilities or other authorities under the ISPS on the calculation of laytime or demurrage.

16. The sale of the cargo was on a CFR basis and also adopted INCOTERMS 2000 which means the goods were considered delivered when "on board the vessel at the port of shipment on the date or within the agreed period." Therefore, INCOTERMS required Defendant Adubos to bear demurrage and any additional costs incurred after the delivery of the goods.

## INDIVIDUAL VOYAGES

17. In accordance with the contracts, Plaintiff nominated vessels for the carriage of cargo which Defendant accepted. The specifics of each voyage follow.

### M/V ELLISPONTOS

18. On or about January 27, 2008, Plaintiff nominated the M/V ELLISPONTOS as the vessel for the carriage of a cargo of Stabilized Ammonium Nitrate (SAN) in bulk, from Riga, Latvia to Brazil.

19. Defendant accepted the nomination of the M/V ELLISPONTOS, and the cargo was loaded onboard the vessel and subsequently discharged.

20. At the discharge port, demurrage was incurred, and the amount due and owing for demurrage, exclusive of interest is $470,163.33.

### M/V FERMITA

21. In or about October 2007, Plaintiff nominated the M/V FERMITA as the vessel for the carriage of a cargo of Stabilized Ammonium Nitrate (SAN) in bulk, from Riga, Latvia to Brazil.

22. Defendant accepted the nomination of the M/V FERMITA, and the cargo was loaded onboard the vessel and subsequently discharged.

23. At the discharge port, demurrage was incurred, and the amount due and owing for demurrage, exclusive of interest is $65,499.88.

### M/V IVS KENSO

24. On or about October 24, 2007, Plaintiff nominated the M/V IVS KENSO as the vessel for the carriage of a cargo of NPK 16-16-16 fertilizer in bulk, from Muuga, Estonia to Brazil.

25. Defendant accepted the nomination of the M/V IVS KENSO, and the cargo was loaded onboard the vessel and subsequently discharged.

26. At the discharge port, demurrage was incurred, and the amount due and owing for demurrage, exclusive of interest is $244,462.90.

### M/V KUJAWY

27. On or about October 5, 2007, Plaintiff nominated the M/V KUJAWY as the vessel for the carriage of a cargo of Stabilized Ammonium Nitrate (SAN) in bulk, from Riga, Latvia to Brazil.

28. Defendant accepted the nomination of the M/V KUJAWY, and the cargo was loaded onboard the vessel and subsequently discharged.

29. At the discharge port, demurrage was incurred, and the amount due and owing for demurrage, exclusive of interest is $65,373.23.

### M/V PLANICA

30. In or about November 2007, Plaintiff nominated the M/V PLANICA as the vessel for the carriage of a cargo of MAP (NP 11-44-0) fertilizer, from Yantai, China to Brazil.

31. Defendant accepted the nomination of the M/V PLANICA, and the cargo was loaded onboard the vessel and subsequently discharged.

32. At the discharge port, demurrage was incurred, and the amount due and owing for demurrage, exclusive of interest is $35,698.51.

### SUMMARY OF AMOUNTS OWED

33. Despite due demand, and in breach of its maritime obligations, Defendant has failed and/or refused to pay the demurrage owed with respect to the voyages identified herein, which demurrage has been paid by Keytrade, and the total amount of $881,197.85, exclusive of interest remains due and outstanding.[2]

34. Under the terms of the contracts, if Defendant Adubos refused and/or failed to pay amounts due and owing under the contracts, a 2% penalty would be imposed, resulting in a penalty of $17,623.96.

### DEMAND FOR SECURITY

35. The contracts provide for the application of Brazilian law for the disputes at issue, which disputes are to be referred to a Brazilian Court. Plaintiff specifically reserves its rights to litigate the substantive matters in dispute or to pursue the claims in any other appropriate forum.

36. Plaintiff has not yet commenced litigation proceedings on the underlying claim but will do so within the time period set by the Court herein.

37. Plaintiff brings this action to obtain security in its favor in aid of the underlying proceedings and in respect to Plaintiff's claims against Defendant as outlined above in the amount of $898,821.81 and to the extent necessary, to compel Defendant to litigate pursuant to the terms of the contracts, and if necessary, to recognize and enforce the foreign judgment(s),

---

[2] Although Defendant's obligation to pay demurrage is independent of any demurrage paid by Plaintiff to third parties, Plaintiff has in fact paid demurrage to third parties on each of the voyages identified herein for delays occasioned in the discharge of the cargoes.

6

when rendered, as a judgment of this Court and/or to take a default against Defendant if it fails to appear herein.

38. This action is further brought to obtain security for the additional sums which are recoverable including Plaintiff's anticipated attorney fees, costs in the underlying proceedings, and interest, all of which are recoverable as part of Plaintiff's claim pursuant to Brazilian law, where the statutory rate of interest is 1% per month.

39. Plaintiff estimates, as nearly as can be computed, that the legal expenses and costs of prosecuting the claims against Defendant will be $100,000, and interest on its damages is estimated to be $414,028.62 (calculated at the rate of 12% from the time the amounts were due and owing for a period of two years, the estimated time for completion of the proceedings in Brazil).[3]

40. The total amount for which Plaintiff claims herein in regards to Defendant's failure to honor its maritime obligations is **$1,412,850.43**.

### REQUEST FOR RULE B RELIEF

41. Defendant continues to transact international business, and in carrying out its international business activities, including the business activities which form the basis of this suit, Defendant makes transfers in U.S. dollars.

42. In particular, prior to its breach of the obligations described herein, Defendant paid Plaintiff other sums due under the subject contracts by dollar-denominated electronic funds transfers from its accounts at one or more banks in Brazil and/or the Cayman Islands to Plaintiff's account at its banks in Switzerland. These transfers, totaling more than $5 million,

---

[3] With respect to the interest calculation, Plaintiff has calculated interest herein using the simple method for calculating interest. Plaintiff specifically reserves its right to seek interest in the underlying action using the compound method for calculating interest.

were cleared by intermediary banks in New York including The Bank of New York Mellon. Copies of those wire transfers are attached as **Exhibit A**.

43. Keytrade also maintained banking relationships with international banks which have assisted Adubos in its financing of its transactions with Keytrade. Those banks include, but are not limited to the following: Banque de Commerce et de Placements, Standard Chartered Bank, Credit Suisse, BNP Paribas, The Economy Bank, Credit Europe Bank, Societe Generale, Garanti Bank International, Zurcher Kantonalbank and Banque Cantonale de Geneve. Those banks' correspondent banks are as follows: The Bank of New York, Standard Chartered Bank, BNP Paribas, Societe Generale, Credit Suisse, Bank of America, Deustche Bank, JPMorgan Chase, Wachovia and Citibank.

44. Additionally, Keytrade's sources have indicated that Adubos is likely to be buying a cargo of potash from BPC (Belorussian Potash Corp.), and based on information Keytrade obtained during a prior transaction between BPC and Keytrade, it was revealed that BPC was a customer of Banque de Commerce et de Placements, which bank has U.S. correspondent banks at The Bank of New York.

45. Defendant Adubos utilizes other entities including but not limited to Sul Goiana Industria e Comercio de Fertilizantes Ltda. ("Sul Goiana"), which acts in the capacity as agent(s) and/or manager(s) and/or paying agent of Defendant Adubos and which receives, holds and/or transfers assets for and on behalf of Defendant Adubos.

46. During the latter part of 2007, Defendant Adubos paid debts owed by it to Keytrade from an account maintained by Sol Goiana on at least two occasions, and thus, it is clear that Defendant Adubos utilizes Sol Goiana to act in the capacity as agent(s) and/or manager(s) and/or paying agent of Defendant Adubos, to receive, hold and/or transfer assets for

and on behalf of Defendant Adubos, which transfers totaled more than $800,000 and were cleared through correspondent banks in New York, including but not limited to Standard Chartered Bank. Copies of those wire remittances are included in **Exhibit A**.

47. After investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but because Defendant continues to conduct business internationally in U.S. Dollars, and all electronic fund transfers are processed by intermediary banks in the United States, primarily in New York, Defendant has, or will shortly have, within this District tangible or intangible property including but not limited to funds representing electronic fund transfers originated by, payable to, or otherwise for the benefit of Defendant, and those in the name of its paying and/or funding agent Sul Goiana Industria e Comercio de Fertilizantes Ltda., at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein.

WHEREFORE, Plaintiff prays:

a. That process in due form of law according to the practice of this Court may issue against Defendant citing it to appear and answer the foregoing, failing which a default can be taken against any property seized;

b. That if Defendant cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendant up to and including **$1,412,850.43** be restrained and attached, including, but not limited to any funds representing electronic fund transfers originated by, payable to, or otherwise for the benefit of Defendant, including but not limited to those in the name of its paying and/or funding agent Sul Goiana Industria e Comercio de Fertilizantes

Ltda., at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Maritime Attachment, including without limitation ABN Amro Bank, Bank of America, BNP Paribas, Citibank, Credit Suisse, Deutsche Bank Trust Co., HSBC, HSBC USA Bank NA, JP Morgan Chase Bank, Societe Generale, Standard Chartered Bank, The Bank of New York Mellon and/or Wachovia Bank.

(c) That since it appears that the U.S. Marshal's Service lacks sufficient staff to effect service of process of Process of Maritime Attachment and Garnishment promptly or economically to permit the attachment of electronic fund transfers, and that since appointing a person over 18 years of age and who is not a party to this action will result in substantial economies in time and expense, such a person be appointed pursuant to Fed.R.Civ.P. 4(c) to serve process of maritime attachment and garnishment in this action;

(d) That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary associated with the claim currently pending, or any amended or supplemental claim, including but not limited to the recognition and enforcement of any judgment entered against Defendant, as may be necessary; and

(e) For such other, further and different relief, including attorneys' fees, interest, costs and disbursements, as this Court may deem just and proper, and/or a default with respect to any property seized in the event a timely response is not filed.

Dated: New York, New York
September 24, 2009

FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiff

By: _____
Gina M. Venezia
Pamela L. Schultz
80 Pine Street
New York, NY 10005
(212) 425-1900

## **ATTORNEY VERIFICATION**

State of New York   )
                    ) ss.:
County of New York  )

GINA M. VENEZIA, being duly sworn, deposes and says as follows:

1. I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

3. The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
Gina M. Venezia

Sworn to before me this
24th day of September, 2009.

_____
Notary Public

MARTHA L. BROWN
Notary Public, State of New York
No. 01BR6067399
Qualified in Kings County
Certificate Filed in New York County
Commission Expires December 10, 2009

12

## Importação - Adubos Sudoeste ltda

De:            <uec.belohorizonte@itau.com.br>
Para:          <importacao@adubossudoeste.com.br>
Enviada em:    quarta-feira, 31 de outubro de 2007 14:34
Assunto:       Swift

```
MT 5103              Single Customer Credit Transfer                Page 00001
{1:F21CBBABBSPAXXX5*1039938503{4:{177:0/103017473{451:0}}                OMEING
Basic Header         F  01 CBBABBSPAXXX 5413 393558
Application Header   I 103 SCBLUS33XXXX N
                           *STANDARD CHARTERED BANK
                           *NEW YORK,NY
User Header          Service Code    103:
                     Bank. Priority  113:
                     Msg User Ref.   108:
                     Validation      119:
Sender's Ref.        *20   : 956398.21517
* * Repeatable Sequence 001 * * * * * * * * * * * * * * Occurrence 00001
Time Indication       13   : Code /         / Time     Sign    Offset
Bank Operation Code  *23 B : CRED
* * Repeatable Sequence 002 * * * * * * * * * * * * * * Occurrence 00001
Instruction Code      23   :     /
Trans. Type Code      26   :
Settlement Amount    *32 A : Date 071030 Currency USD Amount 2.092.522,50
Instructed Amount     33 B :            Cur/Code USD Amount 2.092.522,50
Exchange Rate         36   :
Ordering Customer    *50 K : /
                             ADUBOS SUDOESTE LTDA
                             ROD BR 060 KM 502
                             AGROINDUSTRIAL JATAI GO
                             BRASIL
Sending Institution   51   : /   /
Ordering Inst.        52   : /   /
Sender's Corr.        53   : /   /
Receiver's Corr.      54   : /   /
Third Reimburs.Inst.  55   : /   /
Intermediary          56 A : /   /
                             IRVTUS3N
                             *BANK OF NEW YORK
                             *NEW YORK,NY
Account with Inst.    57 A : /   /
                             CRESCHZZ80A
                             *CREDIT SUISSE
                             *ZURICH
                             *(HEAD OFFICE)
Beneficiary Customer *59   : [REDACTED]
                             KEYTRADE AG
                             RUSSIA FD
Remittance Info.      70   : INV.NB 208707W1
Details of Charges   *71 A : BEN
* * Repeatable Sequence 003 * * * * * * * * * * * * * * Occurrence 00001
Sender's Charges      71 F :             Currency USD Amount 0,00
Receiver's Charges    71   :             Currency     Amount
Send. to Rec. Info.   72   :
Regulatory Report     77   :
Message not designed for direct human entry or processing. Only 70 lines
truncated to 75 characters of field 77 are shown.
Envelope Contents     77   :
Trailer                    : MAC:5R7A09VG
```







EXHIBIT A

```
Company    : BCP
Message    : R103080731608344   Nature : SWF   Type : 103
MUR        : FDC0807313462700      Unit : TRANSFERTS   Network : SWIFT Prio : N
Created    : 2008/07/31 00:00:00
Correspondant : IRVTUS3NXXX - THE BANK OF NEW YORK MELLON


------------------------------ MESSAGE TEXT ------------------------------
 FROM : THE BANK OF NEW YORK MELLON
        NEW YORK,NY UNITED STATES


 TO   : BANQUE DE COMMERCE ET DE PLACEMENTS
        S.A.
        GENEVA SWITZERLAND

DATE : 31/07/2008


MT103 : SINGLE CUSTOMER CREDIT TRANSFER
(20 ) SENDER'S REF.             FDC0807313462700
(23B) BANK OPERATION CODE       CRED (No SWIFT Service Level involved)
(32A) VALUE DATE/CURR./INTERBANK SETTLED AMOUNT
                                DATE         31.JUL,08
                                CURRENCY CODE USD
                                AMOUNT                  3,649,391.90
(50K) ORDERING CUSTOMER         ADUBOS SUDOESTE LTDA
                                RODOVIA BR 060, KM 509 -QD 01 DIST.
                                AGORINDUSTRIAL CEP 75800-970 JATAI
                                GO CX POSTAL 60
(52D) ORDERING INSTITUTION      SWF/BICBKYKY   BANCO INDUSTRIAL e COMERCIAL SA
(59 ) BENEFICIARY CUSTOMER      ACCOUNT NUMBER                  GEORGE TOWN  C.I.
                                [redacted]
                                NAME & ADDRESS
                                KEYTRADE
                                ZURCHERSTRASSE 68, P.O.BOX CH-8800
                                THALWIL, SWITZERLAND
(70 ) REMITTANCE INFORMATION    BNY CUST RRN - FIMP 202/00/08
(71A) DETAILS OF CHARGES        SHA
(-) END OF MESSAGE
```

USD 3410267.90
F01SCBLGB2LBTSY3746528002}
O1031707080408SCBLUS33AXX

:20:
:23B:CRED
:32A:080408USD3410232,9
:33B:USD3410232,9
:50K:/
ADUBOS SUDOESTE LTDA
ROD BR 060 KM 509 QD. 01
JATAI - GO
BRAZIL
:52A:BBDEBRSPBHE

```
:59:/(
KEYTRADE AG
ZURCHERSTRASSE 68 PO BOX
a8800 THALWIL
SWITZERLAND
:70:/RFB/(
/INV/NR. KTI 20070863
:71A:BEN
:71F:USD35,
:72:/INS/FW124071889
/IMAD/0408L4B74G2C004881
-}
----------------------------------
USD 38000
F01SCBLGB2LATSY4127228752}
O1030908071108SCBLUS33AXXX
:20:
:23B:CRED
:32A:071108USD37980,
:33B:USD37980,
:50K:SUL GOIANA INDUSTRIA E COMERCIO DE
FERTILIZANTES LTDA
GO 320 KM 02 - MARGEM ESQUERDA ZONA
GOIATUBA
:52A:BRASBRRJBSA
:59:/
KEYTRADE AG.
ZURCHERSTRASSE 68,P.O BOX CH-6600
bSWITZERLAND
:70:/RFB/:
/INV/KTI 20070864
:71A:BEN
:71F:USD0,
:72:/ACC/LESS CHARGES: USD 20.00
------------------------------
USD 760000
F01SCBLGB2LBTSY3690859898}
O1030837071031SCBLUS33AXXX
:20:2007103100044185
:23B:CRED
:32A:071031USD759980,
:33B:USD759980,
:50K:SUL GOIANA INDUSTRIA E COMERCIO DE
FERTILIZANTES LTDA
GO 320 KM 02 - MARGEM ESQUERDA ZONA
GOIATUBA
:52A:BRASBRRJBSA
:59:/(
KEYTRADE AG
ZURCHERSTRASSE 68, P.O. BOX CH-8600
aSWITZERLAND
```

8/21/2009

:70:/RFB/
/INV/KTI436.1/07
:71A:BEN
:71F:USD0,
:72:/ACC/LESS CHARGES: USD 20.00